1

```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - -X

  UNITED STATES OF AMERICA,     :   21-CR-265(PKC)
                                :
                                :   U.S. Courthouse
                                :   Brooklyn, New York
        -against-               :
                                :   TRANSCRIPT OF
                                :   STATUS CONFERENCE
                                :
                                :
  MICHAEL MCMAHON, ET AL        :   July 14, 2021
                                :   11:00 a.m.
        Defendants.             :
                                :
- - - - - - - - - - - - - -X


BEFORE:
              HONORABLE PAMELA K. CHEN, U.S.D.J.



APPEARANCES:

For the Government:      JACQUELYN M. KASULIS, ESQ.
                         Acting United States Attorney
                         271 Cadman Plaza East
                         Brooklyn, New York 11201
                         BY:  CRAIG HEEREN, ESQ.
                              ELLEN SISE, ESQ.
                              MATTHEW HAGGANS, ESQ.
                         Assistant U.S. Attorneys

                         SCOTT ANDREW CLAFFEE, ESQ.
                         DOJ-Nsd
                         National Security Division
                         Counterintelligence &
                         Export Control Section

For the Defendant
McMahon:                 LAWRENCE S. LUSTBERG, ESQ.
                         GENNA A. CONTI, ESQ.
                         BRIAN J. NEARY, ESQ.
```

| | | |
|---|---|---|
| Zhu: | KEVIN K. TUNG, ESQ. | |
| Zheng: | PAUL A. GOLDBERGER, ESQ. | |
| | RENEE M. WONG, ESQ. | |
| Court Reporter: | Holly Driscoll, CSR, FCRR | |
| | Chief Court Reporter | |
| | 225 Cadman Plaza East | |
| | Brooklyn, New York 11201 | |
| | (718) 613-2274 | |

Proceedings recorded by mechanical stenography, transcript produced by Computer-Assisted Transcript.

\* \* \*

(THE FOLLOWING TAKES PLACE VIA VIDEOCONFERENCE:)

THE COURT:  Good morning, everyone.

THE COURTROOM DEPUTY:  Criminal cause for status conference, docket 21-CR-265, United States versus McMahon, et al.

Before asking the parties to state their appearances I would like to note the following:

Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording and rebroadcasting of court proceedings.  Violation

1  of these prohibitions may result in sanctions, including
2  removal of court issued media credentials, restricted entry to
3  future hearings, denial of entry to future hearings, or any
4  other sanctions deemed necessary by the court.
5          Will the parties please state your appearances for
6  the record starting with the government.
7          MR. HEEREN:  Good morning, Your Honor, Craig Heeren
8  for the United States.  With me are my colleagues Matthew
9  Haggans, Ellen Sise, both from the U.S. Attorney's Office, and
10 Scott Claffee from the National Security Division.  We also
11 have some interns who I believe are dialed in on the public
12 line but will, of course, not be speaking.
13         (Interference in the video feed.)
14         THE COURTROOM DEPUTY:  Ms. Lau, you were saying
15 something?
16         THE INTERPRETER:  I have the defendants on the other
17 line but I think they're sitting in front of a screen or
18 something.  I'm able to hear sort of like an echo from the
19 other side so it is very hard for me to hear everything, so
20 if it is possible for them to maybe be a little bit more --
21 to move away from their screens so I don't hear it on both
22 ends.
23         THE COURTROOM DEPUTY:  So, Mr. Lustberg, we seem to
24 be getting some feedback.
25         (Pause in the proceedings.)

4

1  THE COURTROOM DEPUTY: We need a few more minutes.
2  I'm just going to ask everyone at this point to please keep
3  all your feeds on mute.
4  (Pause in the proceedings.)
5
6  THE COURT: Can you see me now?
7  Sorry, folks, I had to switch to a different device.
8  Hopefully this will work better.
9  Okay, let's try this now. There we go.
10  THE COURTROOM DEPUTY: All right, sorry about that.
11  Let's start all over again.
12  The government, if you'll introduce yourself.
13  MR. HEEREN: Yes, Your Honor, Craig Heeren on behalf
14  of the United States. With me from the United States
15  Attorney's Office are my colleagues Matthew Haggans and Ellen
16  Sise, as well as my colleague Scott Claffee from the National
17  Security Division at the main Department of Justice. Good
18  morning, Your Honor.
19  THE COURT: Good morning.
20  MR. LUSTBERG: Good morning, Judge, Lawrence
21  Lustberg from Gibbons PC on behalf of Mr. McMahon who is
22  present. With me are my colleagues Genna Conti from Gibbons
23  and Brian Neary from the Law Offices of Brian Neary.
24  THE COURT: Good morning to all of you as well.
25  MR. TUNG: Good morning, Your Honor, Kevin Tung on

5

1  behalf of the defendant Zhu Yong.  Zhu Yong is present sitting
2  right across the camera.
3              THE COURT:  Yes, good morning to both of you.
4              MR. GOLDBERGER:  Paul Goldberger for Congying Zheng,
5  and Renee Wong, his counsel as well, sitting next to me.
6              THE COURT:  Good morning.
7              THE COURTROOM DEPUTY:  Will our interpreter please
8  raise her right hand.
9              THE INTERPRETER:  Yes.
10             (Interpreter sworn by the clerk.)
11             THE INTERPRETER:  Yes.
12             THE COURTROOM DEPUTY:  Thank you.
13             Please state and spell your name and indicate the
14  language you're translating.
15             THE INTERPRETER:  Lily Lau, last name L A U.  I'm
16  interpreting in Chinese language, Mandarin dialect.
17             THE COURT:  Good morning to you, Ms. Lau.
18             I want to confirm because at least on my video
19  screen I see -- I don't know if I see all the defendants
20  themselves.  I see Mr. Tung's client and I see Mr. Zheng.  I
21  feel like though maybe -- let's see, Mr. McMahon.
22             (Defendant raises his hand.)
23             THE COURT:  Oh, there you are, sir, okay, I see you.
24  All right.  I think that's everyone then.
25             So, let me hear from the government on the status

6

1  and then, as everyone knows, we do need to have a pretrial
2  conference pursuant to Section 2 of CIPA.
3              MR. HEEREN:  Yes, Your Honor, thank you, and this is
4  Craig Heeren again for the record.
5              So, first, with regard to the case at large, the
6  government has produced some additional discovery, we produced
7  several hundred pages primarily consisting of search warrants
8  and related materials at this time to all three defendants.  I
9  understand at least this morning that one of the defense
10 counsel had an issue receiving it, he notified us today and
11 we're working with him to get that, so we'll make sure he does
12 get that.
13             We anticipate continuing to produce discovery on a
14 rolling basis.  We do anticipate that discovery will be
15 somewhat voluminous in this case due to a substantial number
16 of search warrants for various email accounts, social media
17 accounts, surveillance records and the like and we're doing
18 our best to move expeditiously to get that out.
19             In terms of plea negotiations, the parties remain
20 open to it and without getting into the details with the
21 Court, that's still a possibility at least to discuss with the
22 parties.  So, given that and the overall complexity of the
23 case, we had proposed a date in September to Your Honor's
24 deputy.  I know we have had not had an opportunity to talk to
25 defense counsel in advance, I know at least Mr. Lustberg has

1  advised us -- I don't want to speak for him, of course, but
2  he's indicated there are several dates in September that work
3  for him but obviously if other parties have an issue with it,
4  we'll give them the opportunity to have the floor.
5           I can speak to the CIPA 2 matter as well, unless
6  Your Honor would like to start with those first matters.
7           THE COURT:  Let's move to the CIPA briefing schedule
8  just so I have a sense of how that fits in with the proposed
9  status conference and I think it might be useful as well for
10 the parties or for defense counsel to have some idea of what
11 the government is proposing with respect to that aspect of the
12 case.
13          MR. HEEREN:  Yes, Your Honor, and so I think I'm
14 going to elaborate a little bit just for the benefit of all
15 parties in case anyone isn't as familiar with the classified
16 process, but the government does anticipate -- does believe
17 there are some S-5 materials that may be pertinent in the big
18 picture to this case which necessitates the filing of a CIPA
19 2.  We do anticipate filing possibly filing what's called a
20 CIPA section 4 motion or motion pursuant to CIPA Section four
21 but, in a nutshell, that is an ex parte briefing that advises
22 the Court of certain classified material that may be relevant
23 to the case and proposes a method in which to deal with those
24 materials.
25          In general, those methods can include disclosing

1  these materials in a classified fashion, providing what is
2  known as substitute discovery, in other words, providing the
3  same substance but in a different form that can be shared in
4  an unclassified or lower classification format, or withholding
5  the materials if the Court agrees that they don't rise to the
6  level of favorable and helpful to the defense, which in CIPA
7  parlance is referred to as deletion.
8  　　　　　The process unfortunately particularly in the Second
9  Circuit takes a substantial amount of time because the circuit
10 has concluded that we have to properly invoke the state
11 secrets privilege.  That requires an affidavit from
12 essentially cabinet level officials like the Attorney General
13 himself, among others, depending on what the material is.  As
14 the Court I'm sure is aware, but for everyone's benefit, that
15 process tends to take a substantial amount of time based on
16 the current process and I would also note that the in light of
17 the ongoing pandemic, that's created some issues as well.
18 Obviously things have improved a great deal but there
19 continues to be some limitations at secure facilities in terms
20 of how many people can appear and look at materials, so that's
21 just an added issue there.
22 　　　　　So, in light of all those issues, the government
23 would propose a tentative date to file the CIPA 4 motion in
24 six months from now in January or February.  The government
25 would be careful to note that that's not freezing the

1  litigation.  We are prepared and plan to proceed on a normal
2  track with the remainder of the litigation continuing to
3  disclose discovery and handling any motion practice that may
4  be needed while the CIPA process takes its course.
5       The final thing I would note for the Court is I
6  don't know that all -- I don't believe that all defense
7  counsel have clearances.  I have notified the court
8  information security officer about the potential for a
9  classified process in this case and he's asked us whether he
10 should start the process for granting defense attorneys to be
11 cleared.  The government's position --
12      THE COURT:  Is this Mr. Rucker?
13      MR. HEEREN:  Yes, Your Honor, it is Mr. Rucker.  I
14 don't know if he himself is appearing today, he had said he
15 would send another CISO because he has an appearance in Boston
16 today.
17      THE COURT:  No, that's fine.  Go ahead, I
18 interrupted you.
19      MR. HEEREN:  No, that's fine, Your Honor.  With
20 regard to clearing counsel, as a general matter, the
21 government's position is that counsel does not need to be
22 cleared yet because we don't know that anything will
23 ultimately need to be turned over, however, we are mindful of
24 the timing that it takes to get somebody cleared so if the
25 Court prefers to start the process now to clear counsel, we're

1 not going to object to that except we want to reserve our
2 right and we do reserve our right to point out that just
3 because an attorney has clearance does not provide any
4 particular additional basis for them see to see classified
5 material absent the necessary showings under CIPA.
6         THE COURT:  No, I understand that.
7         Do you have -- I know it may be impossible for you
8 to say or to even know right now but do you have any sense of,
9 as a proportional matter, percentage matter, the volume of
10 potential CIPA information relative to the other discovery
11 that's being provided?
12         Because you say that the government isn't going to
13 slow down the normal discovery process in terms of disclosure
14 of non-classified materials but I guess I don't have any sense
15 whatsoever in light of the six month sort of schedule you're
16 proposing whether or not though in reality that might slow
17 discovery down because the volume of information that could be
18 subject to the CIPA motion is significant or is substantial
19 when compared to the rest of discovery.
20         MR. HEEREN:  Your Honor, it's a bit difficult to say
21 in this setting but I think I can say in the broad strokes it
22 is not -- at this time we don't believe it would substantially
23 hold up the case and it's not -- the bulk of discovery in this
24 case that we're proceeding on is already -- will be able to be
25 disclosed in ordinary discovery.

1 THE COURT: Okay. All right. Fair enough.

2 With respect to the clearance process, just, as you
3 note, it can take some time, again I don't know if this is
4 possible but whether I direct that defense counsels start that
5 process because it's burdensome for everyone really and very
6 time and resource consuming, it would be helpful if the
7 government could give me some assessment, and it could be ex
8 parte even, of whether or not the government anticipates of
9 the various ways of handling classified material, whether it
10 anticipates recommending or agreeing to disclosure to cleared
11 counsel of any of the information versus substitution or
12 non-disclosure or withholding; do you think you'll able to
13 give me any sense of that because that might drive my decision
14 about whether to go through the burdens of having counsel
15 cleared.

16 MR. HEEREN: Yes, Your Honor, I think the best thing
17 to do would be for the government to send Your Honor an ex
18 parte letter, we'll probably send you something fairly quickly
19 on that in the next week or so to get that going. Obviously I
20 think -- I anticipate that it will still be sort of a
21 tentative answer since our review is ongoing but we'll give
22 you our sense as we understand it right now.

23 THE COURT: Counsel, if you can do that say in two
24 weeks, then I might be able to -- or I'm thinking about my own
25 timing, you can make it three weeks, I don't want you to send

1  something if I'm not going to be able to address it
2  immediately; say I'll give you three weeks to give you some
3  assessment as best you can, I realize it's only an estimate or
4  projection, how much of the classified information you
5  anticipate the government might be able to or is going to
6  recommend to Main Justice that you reveal to or disclose to
7  cleared counsel versus the two other options.  That would be
8  helpful in terms of my deciding whether to have defense
9  counsel get clearance.
10           So, let me ask this, does the government know or do
11 defense counsel, I mean obviously they know, how many lawyers
12 are we talking about that would have to get cleared
13 potentially if you know, Mr. Heeren?
14           MR. HEEREN:  Your Honor, I don't know.  I have a
15 vague recollection that Mr. Lustberg indicated that he was
16 cleared but I don't want to speak for him.
17           THE COURT:  Okay.  Mr. Lustberg, are you in fact --
18 do you have security clearance?
19           MR. LUSTBERG:  I have had security clearance, Your
20 Honor, I believe I have to update it as you have to do
21 periodically, but my experience having done that a number of
22 times, I've been involved in quite a few CIPA cases,
23 Guantanamo related and otherwise, over the years is that that
24 process of updating is a lot less onerous and a lot more
25 expeditious them the usual process of getting cleared.  I do

1  believe though that I do have to get mine updated but I have
2  had security clearances so I don't think that that will be
3  problematic and I know Mr. Rucker from prior matters as well
4  and I'm happy to communicate with him and find out how long he
5  thinks that would take.  I think for me at least it would be
6  fairly quick.
7          THE COURT:  All right.  If anyone else has clearance
8  that's still valid, can you raise your hand.
9          (No hands.)
10         THE COURT:  I don't see any defense attorneys
11 showing that they have been cleared.  Even if it's not valid
12 now or if you don't know, if you had clearance in the past
13 like Mr. Lustberg, can you raise your hand.
14         Okay, so that's Mr. Goldberger.
15         Say your name again, I apologize.
16         MR. GOLDBERGER:  Mr. Goldberger.
17         THE COURT:  How long ago?
18         MR. GOLDBERGER:  It's a long time ago, it was in the
19 Eastern District the case but it's many years ago.
20         THE COURT:  So, you probably have to start the
21 process all over again.  All right.  That gives me an idea, I
22 think it might be quite an undertaking given the number of
23 defendants and the number of attorneys, so after I see the
24 government's letter I'll make a decision about whether it's
25 worthwhile to undertake this exercise because it's invasive

1  and it is obviously very burdensome for everybody.  So, let's
2  see if we actually have a need.
3         On the other hand, I don't want to slow things down
4  if in six months it appears that there is going to be some
5  need for it and then we start the process then which will then
6  put us another six months I think out from moving the case
7  along.
8         So, tell me more in detail, Mr. Heeren, what the
9  proposed schedule is.  I think it starts with the filing of
10 the Section 4 motion in six months, is that right?
11        MR. HEEREN:  That's right, Your Honor, and then at
12 that point Your Honor would take whatever time the Court needs
13 obviously to review it, either the Court can rule on the
14 papers if she thinks it's straightforward enough or the Court
15 can conduct an ex parte CIPA 4 hearing with the government.
16        After that in some cases courts in this district
17 have consulted in an ex parte setting with defense counsel --
18        THE COURT:  Right.
19        MR. HEEREN:  -- without obviously revealing what the
20 government told the Court but to get defense counsel's views
21 of their theory of the case and then ultimately after that in
22 my experience the Court has made a ruling that's typically --
23 the substance of it is it remains ex parte but there's an
24 order on the docket that sort of sets out the case law
25 generally.  It's kind of hard to set a deadline for that,

1  obviously we'll be ready when the Court wants us to be after
2  that motion is filed and we can move fairly expeditiously.
3              THE COURT:  That sounds fine.  I think given that
4  the bulk of the discovery is going to be produced or has or is
5  going to be produced during regular discovery, I am fine with
6  having the government file its motion in six months, so that
7  would be in January 2022.
8              Did the government have a date in mind?
9              MR. HEEREN:  No, Your Honor, I suppose, you know,
10 midway through the month, January 15th or 14th, whatever
11 weekday that there is so we're clear of the holidays would
12 probably be for the best.
13             THE COURT:  Okay.  So, why don't we go with January
14 14, 2022 for the government to file its CIPA motion, it will
15 be a Section 4 motion, file that, and you're authorized to
16 file that ex parte and obviously I'll review it and see if
17 it's appropriate to keep it so which I assume I will.
18             And let me further say that I'm less concerned about
19 the length of time that's being proposed because the
20 defendants are also not in custody and, as I said before, I
21 think discovery and plea negotiations can still proceed even
22 as the government prepares its CIPA application and based on
23 the government's representation, it doesn't appear that that's
24 going to -- that application or the resolution of it is going
25 to significantly affect the progress of this matter.  All

1  right.

2  　　　　　Did any defense counsel want to be heard on the CIPA
3  issue briefing schedule or otherwise?

4  　　　　　MR. LUSTBERG:  Your Honor, just quickly, this is
5  Mr. Lustberg on behalf of Mr. McMahon, obviously we, as I
6  said, I've been through this before and that matter of
7  proceeding is quite normal and I appreciate that the Court has
8  asked the question of how much of the discovery is classified
9  because I do think that the key is to just get on with the
10 other discovery in the meantime.  We just received discovery
11 yesterday in advance of today's conference and if our next
12 conference is to be useful, maybe I'm jumping the gun here a
13 little bit, it would be good for us to have as much discovery
14 as quickly as possible so we could then potentially set dates
15 for other proceedings and perhaps move this along, but with
16 respect to CIPA itself, no, I'm quite used to this and this
17 seems like a totally reasonable schedule.

18 　　　　　THE COURT:  All right.  So, let me set a couple of
19 dates.  August 4, 2021 for the government to provide a letter
20 that will hopefully inform me about whether or not we need to
21 clear counsel or start the clearance process now for the
22 numerous counsel we have, so just give me some idea of how you
23 think I might recommend handling this perhaps by a proportion
24 or whatever you think is going to be most helpful for me to
25 make that determination.

1   And then let's set a next status conference date in
2 September. I think by September -- frankly, we could have
3 done it today, I think that can be in-person. I think that
4 eliminates any potential technical issues and I think it's
5 generally better just for everyone to be in the same room for
6 all sorts of reasons. So, barring any sort of worsening of
7 the pandemic situation, the next conference will be in-person
8 in September.
9   How is September 14th at two p.m. for everybody in?
10   MR. LUSTBERG: Your Honor, as I mentioned to
11 Mr. Heeren this morning, I am going to be out of town
12 essentially on a family wedding from the 13th till the 23rd,
13 so we're right in this time frame, if it could be before or
14 after that I would be most appreciative. Obviously there are
15 other members of my team that can cover it in my absence but
16 if we can do that, I'd really appreciate it.
17   THE COURT: Well, my inclination -- why don't we
18 make it before that. Your commitment is from the 13th you
19 say?
20   MR. LUSTBERG: Yes, Your Honor.
21   THE COURT: So, Fida, can we do it the week before
22 then?
23   THE COURTROOM DEPUTY: September 10th at ten a.m.
24   MR. GOLDBERGER: Judge, I think the week before that
25 would be a problem for both Ms. Wong and myself. I would

1  appreciate -- we have some issues, both business and personal
2  issues, if you could put it for after the 23rd sometime, I
3  think that would be better for us.
4         THE COURT:  Okay.  I'm wondering maybe if we should
5  move it to October.  September is a very full month for us in
6  general and actually as happened, I may be sitting by
7  designation in the Circuit on the 24th of September which
8  always involves more work than I care to think about, so I
9  think that will be a difficult period for us in general and
10 September has other issues when it comes to District Court
11 work, as some of you may know.
12        So, why don't we move it to October and I think by
13 then the parties should be able to give me some idea if you
14 anticipate any motions based on the discovery that you've
15 received and obviously not factoring in any CIPA issues.
16        Wait, my deputy is telling me we have trial.  Let's
17 see.  All right.  So, Fida, why don't we try for the last week
18 in September.
19        THE COURTROOM DEPUTY:  September 27th at 11 a.m.
20        THE COURT:  Okay.  Is that sold to everybody here?
21 Okay, that would be our next date.  I am excluding time from
22 now until then in the interests of justice to allow the
23 additional production of discovery as well as plea
24 negotiations to commence or continue.
25        Anything else from the government?

1   MR. HEEREN:  Yes, Your Honor, and forgive me if it
2 was said at the beginning when we were having some technical
3 difficulties, just for the record could we just confirm with
4 the defendants or defense counsel that they consent to
5 appearing by video today?
6   THE COURT:  Thank you.  Actually, no, I forgot to do
7 that because I was having so much trouble getting on the call
8 myself.
9   So, let's go in order here; for Mr. McMahon, does
10 counsel consent to his appearance remotely today?
11   MR. LUSTBERG:  Yes, Your Honor.
12   THE COURT:  And for Mr. Zheng?
13   MR. GOLDBERGER:  Yes, Your Honor.
14   THE COURT:  And for Mr. Sue?
15   MR. TUNG:  Yes, Your Honor.
16   THE COURT:  Did I miss anybody?
17   (No response.)
18   THE COURT:  I do find it is in the interests of
19 justice or would harm the serious interests of justice if we
20 did not proceed today remotely which I have authority to do
21 under the current Administrative Order in this court due to
22 the ongoing risks and difficulties presented by the COVID
23 pandemic, but, as I said before, as things continue to ease up
24 in terms of those restrictions and issues, I think we'll be
25 able to have everyone appear in-person for the next conference

20

1  and that we should endeavor to do so.  All right.
2           Anything else from any defense attorney?  If so,
3  raise your hand.
4           (No response.)
5           THE COURT:  Okay.  All right.  So, I will see
6  everyone then in late September.  Stay well, everyone.  Thank
7  you.
8           MR. LUSTBERG:  Thank you, Your Honor.
9           MR. HEEREN:  Thank you, Your Honor.
10          (Time noted:  11:36 a.m.)
11          (End of proceedings.)