UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA,

                       - against -

HU JI, *et al.*,

                           Defendants.
-------------------------------------------------------x

**<u>MEMORANDUM & OPINION</u>**

21-CR-265 (S-1) (PKC) (RER)

PAMELA K. CHEN, United States District Judge:

        Defendant Michael McMahon currently awaits trial on charges of interstate stalking in violation of 18 U.S.C. § 2261A(1)(B), acting as an agent of a foreign government without prior notification to the Attorney General in violation of 18 U.S.C. § 951(a), and conspiracy to commit these offenses in violation of 18 U.S.C. § 371—all in connection with a campaign allegedly directed by officials of the People's Republic of China ("China" or "PRC") to pressure certain Chinese nationals living in the United States to repatriate to China. (*See* Superseding ("S-1") Indictment, Dkt. 76.) Presently before the Court is McMahon's pretrial motion for discovery and an evidentiary hearing based on allegations of prosecutorial misconduct. (*See* Mot. for Disc. and Evidentiary Hr'g, Dkt. 146.) For the reasons stated below, the motion is denied in its entirety.

<b>BACKGROUND</b>

**I.      Government's Allegations[1]**

        Defendant McMahon is a licensed private detective in New Jersey. (S-1 Indictment, Dkt. 76, ¶ 6.) Sometime around September 2016, Defendant McMahon was hired to investigate and surveil an individual, John Doe-1, a PRC citizen who resides in the United States. (*Id.* ¶¶ 12–13.) John Doe-1 is a target of a broader pressure campaign orchestrated by the PRC Government, called

---

[1] The Court assumes the parties' familiarity with the allegations in the Superseding Indictment and does not recite the allegations in full. (*See* S-1 Indictment, Dkt. 76.)

"Operation Fox Hunt," to locate and repatriate alleged Chinese "fugitives" who have fled to foreign countries, including the United States. (*Id.* ¶ 14.) The Government alleges that Defendant was tasked with "investigat[ing] John Doe[-]1 and his family, including by conducting surveillance of John Doe[-]1 and obtaining John Doe[-]1's banking information." (*See id.* ¶ 19.) The Government further alleges that Defendant emailed his co-defendant in this case information about international travel by Jane Doe-1 (John Doe-1's wife), and the date of birth, Social Security number, and banking information for Jane Doe-2 (John Doe-1's adult daughter). (*Id.*)

A separate prong of the pressure campaign directed by PRC officials entailed surveillance and online harassment of Jane Doe-2, who resided in northern California. (*See* Compl., Dkt. 1, ¶¶ 81, 96–108.) As part of that effort, Defendant Zhai Yongqiang directed another individual (the "Co-Conspirator") to hire a different private investigator ("California PI") to surveil Jane Doe-2.[2] (*Id.* ¶¶ 81–83; *see also* Superseding Indictment, Dkt. 78, ¶ 41.) According to the Government, the California PI was a confidential human source for the FBI, and while "purport[ing] to investigate and surveil Jane Doe-2" at the direction of the Co-Conspirator, the California PI's activities were in fact being supervised by federal law enforcement. (*See* Compl., Dkt. 1, ¶ 96.) As part of the law enforcement operation, officials provided materials related to Jane Doe-2 that the PI could then provide to the Co-Conspirator. (*Id.*)

## II. Defendant McMahon's Motion[3]

Sometime around March 2013, Defendant McMahon was retained by Paul Bergrin, a lawyer who previously was convicted of various crimes, including conspiracy to commit murder

---

[2] Defendant McMahon is not alleged to have played any direct role in this part of the PRC's pressure campaign. (*See generally*, S-1 Indictment, Dkt. 76.)

[3] The following facts related to Paul Bergrin are mostly drawn from McMahon's motion papers. The Government has not challenged their validity, only their relevance.

in connection with his representation of members of a drug trafficking organization in New Jersey. (Declaration Michael McMahon ("McMahon Decl."), Dkt. 146-7, ¶ 3.)  Bergrin's defense team hired McMahon to conduct an investigation for Bergrin's post-conviction motion for a new trial. (*Id.*)  Between 2013 and 2018, McMahon conducted over 100 interviews and background searches for Bergrin's case.  (*Id.* ¶ 4.)[4]

On October 27, 2020, an arrest warrant was issued by the Honorable Peggy Kuo for McMahon in the present case.  (*See* Arrest Warrant, Dkt. 3.)  On October 28, 2020, McMahon was arrested at his home by five FBI agents.  (McMahon Decl., Dkt. 146-7, ¶ 5.)  During his arrest, McMahon asked the FBI agents: "Is this about Paul Bergrin?"  (*Id.* ¶ 9.)  In response, one of the FBI agents, Sean McCarthy, allegedly stated: "No, but I know you from the case. You've been on my board more than once."  (*Id.*)[5]  After arresting McMahon, Agent McCarthy and another FBI agent drove him to conduct a post-arrest interview.  (*Id.* ¶ 12.)  In the vehicle, McMahon asked McCarthy "So you know me from Paul Bergrin?"  (*Id.*)  Agent McCarthy replied: "The case agent [on the Bergrin case] was my officemate."  (*Id.*)  Agent McCarthy was one of the agents who conducted McMahon's post-arrest interview.  (*Id.* ¶ 14.)

---

[4] As relevant here, Bergrin's case was initiated and prosecuted by the United States Attorney's Office for the District of New Jersey. *See United States v. Bergrin*, No. 20-2828, 2022 WL 1024624 (3rd Cir. Apr. 6, 2022).

[5] McMahon's wife and son, who were present at the time of the arrest, have largely corroborated his account.  McMahon's son recounts his father asking the FBI agents, "Is this about Paul Bergrin?", to which one of the FBI agents "shook his head, looked at [Defendant] with a smirk, and stated[,] 'You've been on my board more than once.'"  (*See* Declaration Michael T. McMahon, Dkt. 146-9, ¶ 4.)  McMahon's wife recalls hearing Agent McCarthy say the word "board," but "could not make out the rest of what [McCarthy] said" in response to her husband's inquiry as to whether his arrest was about Paul Bergrin.  (*See* Declaration of Mary McMahon, Dkt. 146-8, ¶¶ 5–6.)

### III.    Procedural History Following Arrest

On July 21, 2021, the Government filed a Superseding Indictment against McMahon and eight other individuals.  (S-1 Indictment, Dkt. 76.)  McMahon was charged with conspiracy to act as an illegal agent of a foreign government and the underlying substantive count (Counts One and Two), and conspiracy to engage in interstate stalking and the underlying substantive count (Counts Three and Four).  (*Id.*)  McMahon pled not guilty to all four counts on September 27, 2021. (9/27/21 Minute Entry.)  On December 10, 2021, McMahon filed a motion to dismiss all counts of the Superseding Indictment, and to challenge venue as to Counts Two and Four, *i.e.*, the substantive counts of acting as an illegal agent and engaging in interstate stalking.  (Defendant McMahon's Mot. to Dismiss, Dkt. 114.)  After the motion was fully briefed, the Court issued a Memorandum & Order denying the motion to dismiss.  *See United States v. Ji*, No. 21-CR-265 (PKC) (S-1), 2022 WL 595259 (E.D.N.Y. Feb. 28, 2022).

On August 8, 2022, McMahon filed the present motion for discovery and for an evidentiary hearing.  (*See* Dkt 146; *see also* Br. in Supp. of Def. Michael McMahon's Mot. to Dismiss ("McMahon Br."), Dkt. 146-1.)  He submitted an additional letter in further support of his motion on September 26, 2022.  (McMahon Suppl. Letter, Dkt. 147.)  The Government filed its opposition on October 13, 2022 (*see* Government's Mem. of Law in Opp'n ("Gov. Br."), Dkt. 148), and McMahon filed a reply on November 14, 2022 (*see* Reply Br. in Further Supp. of Def. Michael McMahon's Mot. ("McMahon Rep."), Dkt. 152).

### DISCUSSION

### I.    Legal Standards

McMahon's motion for discovery and an evidentiary hearing is premised on a claim of vindictive prosecution.  However, at times, both McMahon and the Government refer to and apply the legal standards for selective prosecution.  Although these theories are related, courts have

applied distinct standards to vindictive and selective prosecution motions.  *See United States v. Miller*, Nos. 92-CR-91, 99-CV-3346 (RJD), 2010 WL 1269796, at *9 (E.D.N.Y. Mar. 30, 2010); *see also United States v. Donziger*, No. 19-CR-561 (LAP), 2021 WL 1820190, at *4 (S.D.N.Y. May 6, 2021) ("Although [vindictive and selective prosecution] claims are related, the legal standards differ slightly.").  The Court therefore discusses the standards for both theories.

### A.    Prosecutorial Discretion

It is well settled that within the federal criminal justice system, "the Attorney General and the United States Attorneys retain 'broad discretion' to enforce the Nation's criminal laws." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (citing *Wayte v. United States*, 470 U.S. 598, 607 ("In our criminal justice system, the Government retains 'broad discretion' as to whom to prosecute.")).  Because a "presumption of regularity" attaches to prosecutorial decisions, courts must presume "in the absence of clear evidence to the contrary" that prosecutors "have properly discharged their official duties." *Armstrong*, 517 U.S. at 464.  Accordingly, the Supreme Court has consistently observed that "the decision to prosecute is particularly ill-suited to judicial review." *See Wayte*, 470 U.S. at 607.  "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).

### B.    Vindictive Prosecution

"[A] prosecution brought with vindictive motive, penalizing those who choose to exercise constitutional rights, would be patently unconstitutional." *United States v. Stewart*, 590 F.3d 93, 122 (2d Cir. 2009) (quoting *United States v. Sanders*, 211 F.3d 711, 716 (2d Cir. 2000)).  There are two ways to prove vindictive motive.  First, a "vindictive motive for a prosecution 'will be found where there is direct evidence of actual vindictiveness[.]" *United States v. Koh*, 199 F.3d

632, 639 (2d Cir. 1999) (quoting *United States v. White*, 972 F.2d 16, 19 (2d Cir. 1992), *cert. denied*, 506 U.S. 1026 (1992)). Alternatively, courts have found that a "rebuttable presumption of a vindictive motive may arise under certain circumstances." *Id.* (quoting *White*, 972 F.2d at 19). Criminal charges must be dismissed "if actual vindictiveness has been demonstrated, or if . . . there is a presumption of vindictiveness that has not been rebutted by objective evidence justifying the prosecutor's action." *Stewart*, 590 F.3d at 122 (citations and internal quotation marks omitted). "To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'" *United States v. Goodwin*, 457 U.S. 368, 372 (1982) (quoting *Bordenkircher*, 434 U.S. at 363).

For an indictment to be dismissed due to prosecutorial vindictiveness, "the defendant must show that the circumstances of a case pose a realistic likelihood of such vindictiveness." *Sanders*, 211 F.3d at 717 (cleaned up). Such circumstances must present "a realistic likelihood of vindictiveness that would be 'applicable in all cases.'" *Id.* (quoting *Goodwin*, 457 U.S. at 381). Courts must examine the "'totality of the objective circumstances' to determine whether it is likely" that the decision to prosecute was a result of vindictiveness. *United States v. Sattar*, 314 F. Supp. 2d 279, 311 (S.D.N.Y. 2004) (quoting *United States v. King*, 126 F.3d 394, 397 (2d Cir. 1997)). Because "the decision as to whether to prosecute generally rest within the broad discretion of the prosecutor," *see White*, 972 F.2d at 18, the Second Circuit "has consistently adhered to the principle that the presumption of prosecutorial vindictiveness does not exist in a pretrial setting," *Stewart*, 590 F.3d at 122 (citation omitted).

To establish an actual vindictive motive, a criminal defendant must show that "(1) the prosecutor harbored genuine animus toward the defendant, or was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a 'stalking horse,'

6

and (2) [the criminal defendant] would not have been prosecuted except for the animus." *Koh*, 199 F. 3d at 640 (internal citations omitted).  "A finding of actual vindictiveness requires direct evidence such as evidence of a statement by the prosecutor, which is available only in a rare case." *United States v. Johnson*, 171 F.3d 139, 140 (2d Cir. 1999) (citations and quotation marks omitted). Moreover, a defendant claiming he has been subjected to vindictive prosecution "must prove objectively that the prosecutor's charging decision was a 'direct and unjustifiable penalty,' that resulted 'solely from the defendant's exercise of a protected legal right.'" *Sanders*, 211 F.3d at 716–17 (quoting *Goodwin*, 457 U.S. at 380 n.11, 384 n.19).  Importantly, there cannot be a finding of actual vindictiveness just because "the defendants were a thorn in the government's side." *Id.* at 718.  Instead, the defendants' actions must have "drawn blood" against the government, *i.e.*, the actions that allegedly sparked the prosecutor's must have been effective in stymieing the prosecution. *See id.*

### C.    Selective Prosecution

The Fifth Amendment, through its equal protection guarantee, also forbids prosecutors from prosecuting "based on an 'unjustifiable standard such as race, religion, or other arbitrary classification.'" *Armstrong*, 517 U.S. at 464 (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)). A defendant contending that the government has engaged in selective prosecution against him "bears the heavy burden of establishing, at least *prima facie*, (1) that while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution," and "(2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith[.]" *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974).  These two prongs are often referred to as the discriminatory effect and discriminatory purpose prongs. *See Armstrong*, 517 U.S. at 465 ("The claimant must demonstrate that the federal prosecutorial policy had a discriminatory effect and

that it was motivated by a discriminatory purpose.") (quotation marks and citation omitted).  "The discriminatory effect prong requires a showing that similarly situated individuals of a different classification were not prosecuted."  *United States v. Alameh*, 341 F.3d 167, 173 (2d Cir. 2003) (cleaned up).

Moreover, a defendant "seeking to show discriminatory purpose must show 'that the decisionmaker [] selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group.'"  *Id.* (quoting *Wayte*, 470 U.S. at 610 (internal quotation marks and citations omitted); *see also Stewart*, 590 F.3d at 121 (explaining that a criminal defendant bringing a selective prosecution claim would have to show that he was "treated differently from other similarly situated individuals and that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure" him) (internal quotation marks and citations omitted).  Discriminatory purpose "may . . . be demonstrated through circumstantial or statistical evidence."  *Alameh*, 341 F.3d at 173.

### D.    Discovery for Vindictive or Selective Prosecution Claims

The standard for discovery into a claim of vindictive prosecution is "correspondingly rigorous, but of course not identical to the standard applied to the merits."  *Alameh*, 341 F.3d at 173 (internal citation and quotation marks omitted).  To obtain discovery on a vindictive prosecution claim, "a defendant must present at least 'some evidence tending to show the existence of the essential elements of the defense and that the documents in the government's possession would indeed be probative of these elements.'"  *United States v. Chalmers*, 474 F. Supp. 2d 555, 569 (S.D.N.Y. 2007) (ultimately quoting *Berrios*, 501 F.2d at 1211–12).  The Second Circuit adopted this "rigorous" standard that would serve as a "a significant barrier to the litigation of insubstantial claims" because it recognized that "examining the basis of a prosecution delays the

8

criminal proceedings, threatens to chill law enforcement by subjecting the prosecutor's motives and decision-making to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy." *Sanders*, 211 F.3d at 717 (internal citations and quotation marks omitted). Similarly, a defendant must place controlling facts in dispute in order to be entitled to an evidentiary hearing as to their vindictive prosecution claim. *See Sattar*, 314 F. Supp. 2d at 314 (citing *White*, 972 F.2d at 20); *see also United States v. Aviv*, 923 F. Supp. 35, 37 (S.D.N.Y. 1996) (defendant must "raise a reasonable doubt that the government acted properly in seeking the indictment" to obtain a hearing).

Whether the defendant seeks a hearing or discovery, "[b]oth standards require the defendant to offer some evidence supporting both elements of the claim." *See Aviv*, 923 F. Supp. 35 at 37; *see also Sanders*, 211 F.3d at 718 ("It would be too easy for defendants to obtain discovery [or an evidentiary hearing] on vindictive prosecution claims if all that was required was to identify a potential motive for prosecutorial animus.") Therefore, courts have found that a defendant's failure to make a showing as to any of the "essential elements" necessary to dismiss an indictment for vindictive prosecution is fatal to a motion for discovery or an evidentiary hearing. *See, e.g.*, *United States v. Awan*, 459 F. Supp. 2d 167, 187 (E.D.N.Y. 2006) ("Since the defendant has produced no evidence of actual vindictiveness, neither discovery nor a hearing is warranted[.]"); *Aviv*, 923 F. Supp. at 38 ("Because there is no objective showing that the prosecution would not have been brought even in the absence of vindictiveness, [defendant's] showing of vindictiveness is insufficient to obtain discovery, a hearing[,] or dismissal of the indictment.").

The Second Circuit has recognized that "the amount and kind of evidence that suffices to meet the requirements of 'some evidence' justifying discovery [may be] case-specific, and that

courts must consider what evidence a defendant can obtain with due diligence in the absence of discovery[.]" *Alameh*, 341 F.3d at 174. However, courts have consistently held that affidavits that "speak in generalities and offer only beliefs" do not justify discovery or an evidentiary hearing. *Id.*; *see also United States v. Fares*, 978 F.2d 52, 59 (2d Cir. 1992) ("Mere assertions and generalized proffers on information and belief are insufficient" evidence of selective prosecution.)

## II.     Analysis

McMahon requests an evidentiary hearing and discovery on the theory that the prosecutors bringing this case harbored "actual" animus toward him. The evidence he proffers of such animus includes: (1) comments made by one of the FBI agents arresting him; (2) a reference to his arrest in a brief submitted to a federal appellate court in a post-trial motion in a case that he was involved in as a private investigator on behalf of Bergrin, the defendant-appellant in that case; and (3) his claim that other private investigators who were "similarly situated" to him have not been prosecuted by the United States Department of Justice. For the reasons stated below, the Court finds that McMahon is entitled to neither discovery nor an evidentiary hearing.

### A.     No Presumption of Vindictiveness

McMahon does not clearly state in his brief, his reply, or even his supplemental letter whether he is asserting that a presumption of vindictiveness arises from the facts surrounding his prosecution. (*See* McMahon Br., Dkt. 146-1; McMahon Supplemental Letter, Dkt. 147; McMahon Rep., Dkt. 152.) Regardless, McMahon is not entitled to a presumption of vindictiveness because this case is still in a pretrial setting. The Second Circuit "has consistently adhered to the principle that the presumption of prosecutorial vindictiveness does not exist in a pretrial setting." *See Stewart*, 590 F.3d at 122 (citations and quotation marks omitted). Yet, putting aside the pretrial posture and considering the totality of objective circumstances in this case, the Court still finds that there is no realistic likelihood of vindictiveness by the federal prosecutors in this District. For

a defendant to benefit from the presumption of vindictiveness, "the circumstances must present a realistic likelihood of vindictiveness that would be 'applicable in *all cases*.'" *See Sanders*, 211 F.3d at 717 (quoting *Goodwin*, 547 U.S. at 381 (emphasis added)).  As explained in further detail below, McMahon does not claim that any of the prosecutors in this case played any role in the Bergrin case, which was prosecuted by a different United States Attorney's Office.  Furthermore, McMahon has not alleged any plausible reason why Agent McCarthy (whose only connection to the Bergrin case is through his former officemate, Agent Shawn Brokos) would be so strongly motivated to retaliate against McMahon and how Agent McCarthy would have prevailed upon prosecutors in this District to investigate and eventually prosecute McMahon.  Accordingly, the Court does not find that the totality of the objective circumstances presents a realistic likelihood of vindictiveness.

### B.    No Actual Animus

Therefore, to either secure an evidentiary hearing or be allowed to serve discovery requests on the Government, McMahon must demonstrate actual vindictiveness, which requires "direct evidence," such as statements by the prosecutor evidencing the vindictive motive.  *See Koh*, 199 F.3d at 640.  Once again, McMahon does not state clearly who he believes harbored the vindictive animus that motivated this prosecution.  After reviewing the briefs, the Court can only discern two possibilities: (1) FBI Agent McCarthy or (2) the prosecutors within the United States Attorney's Office of the District of New Jersey who prosecuted Bergrin.

### 1.    Agent McCarthy's Statements Do Not Prove Vindictiveness

McMahon contends that his brief exchange with FBI Agent McCarthy during his arrest on October 28, 2020, constitutes "some evidence" of actual animus against him.  He explains:

> Special Agent Sean McCarthy, who arrested and then interviewed [Defendant] McMahon, was the officemate of Special Agent Shawn Brokos, the lead FBI Agent who handled the investigation of Paul Bergrin and was the FBI Agent responsible

11

for recruiting and supervising Kemo McCray, the murdered informant against one of Bergrin's clients. Moreover, as set forth above, Bergrin, who represented himself at trial, aggressively cross-examined Special Agent Brokos, challenging her testimony and ultimately arguing that she mishandled her confidential informant, ultimately leading to his death. And even after Bergrin was convicted and sentenced to life in prison, his cousin, Ronald Bergrin, located Special Agent Brokos's address and threatened her safety.

(McMahon Br., Dkt. 146-1, at 20–21.)

This sequence of events along with Agent McCarthy's remarks that he "know[s]" McMahon from the Bergrin case and that McMahon has "been on [McCarthy's] board more than once" (*see id.* at 21), are insufficient to show actual vindictiveness. First, the Court notes that McMahon has not submitted any evidence, such as affidavits or trial transcripts, to support his account of the connections between Agent Brokos and Bergrin. Even if the Court assumes that McMahon is accurately recounting the relationship between Brokos and Bergrin, McMahon has shown at best that there may be some animus between these two individuals. McMahon, however, has failed to show even "some evidence" of animus between himself and Brokos's former officemate, Agent McCarthy. Even accepting *arguendo* Defendant's representations that Agent McCarthy made the statements attributed to him, they do not constitute evidence of animus, but are, on their face, unremarkable statements by a case agent reflecting the agent's knowledge of, and interest in, the target. McMahon's contentions are exactly the types of "[m]ere assertions and generalized proffers on information and belief [that] are insufficient to justify discovery." *Chalmers*, 474 F. Supp. 2d at 570 (brackets and citations omitted).

Furthermore, even assuming again that Agent McCarthy said to McMahon that he has been on McCarthy's "board more than once" (and the Court makes no such finding), McMahon has made no showing that any alleged animus on McCarthy's part was the but-for cause of his prosecution. *See Koh*, 199 F.3d at 640 (requiring a showing that "[the defendant] would not have

12

been prosecuted except for the animus").  Courts have routinely denied discovery or an evidentiary hearing if a defendant has not made a showing that the prosecutors acted at the behest of someone who had genuine animus against the defendant.  *See, e.g.*, *United States v. Dean*, 119 F. Supp. 2d 81, 84 (D. Conn. 2000) ("[E]ven if Dean's allegations are credited and the Court draws all reasonable inferences from the circumstances leading to the federal arrest, it still remains a matter of pure speculation or surmise that the United States Attorney's Office was influenced in any way by some vindictive motive attributable to the state prosecutor."); *United States v. Avenatti*, 433 F. Supp. 3d 552, 574 (S.D.N.Y. 2020) ("[a]cknowledging the animosity between Avenatti" and the then-President of the United States, but denying a motion to dismiss the indictment or alternatively for discovery because defendant "has not proffered evidence suggesting that th[e] prosecution was initiated at [the] President['s] behest"); *Aviv*, 923 F. Supp. at 37–38 (denying a request for an evidentiary hearing or discovery even though there was a strong showing of animus, because there was "no objective showing that the prosecution would not have been brought even in the absence of vindictiveness").

Recognizing perhaps that there is no evidence of a link between McCarthy's statements and the decision by the United States Attorney's Office in this District to prosecute him, McMahon tries to argue that the "Government's statement during [his] arrest indisputably constitutes 'some evidence[]' that the *Government* harbored genuine animus toward [him]."  (*See* McMahon Rep., Dkt. 152, at 8–9 (emphasis added) (internal citation omitted).)  But this is a patent mischaracterization: it was Agent McCarthy who allegedly made comments demonstrating his animus at the time of arrest, and there has been no allegation of similar comments from any prosecutors on this case.  By grouping Agent McCarthy and the federal prosecutors as "the Government," McMahon tries to evade his burden to show that "the *prosecutor* harbored genuine

animus toward the defendant," or that the prosecutor "was prevailed upon to bring the charges by another with animus." *Koh*, 199 F.3d 640. Regardless, the case law is clear that any animus held by an investigator cannot automatically be attributed to the prosecution team. *See Koh*, 199 F.3d at 640 (holding that even if a "quasi-investigator for the government" or "an agent of the U.S. Attorney's Office" held animus against a defendant, courts cannot grant evidentiary hearings where "there was no evidence that the decision to prosecute was the result of his allegedly improper motives"); *United States v. Hommosany*, No. 99-1534, 2000 WL 254050, at *2 (2d Cir. Mar. 3, 2000) ("It was not improper for the District Court to refuse to impute to the ultimate prosecutors the motives of agency investigators." (collecting cases)); *cf. United States v. Hastings*, 126 F.3d 310, 314 (4th Cir. 1997) ("We will not impute the unlawful biases of the investigating agents to the persons ultimately responsible for the prosecution."), *cert. denied*, 523 U.S. 1060 (1998).

In conclusion, McMahon has not made any showing that he would "not have been prosecuted except for" Agent McCarthy's alleged animus or that Agent McCarthy has "prevailed upon" the federal prosecutors in this District to bring this case against McMahon. *See Koh*, 199 F. 3d at 640; *see also Aviv*, 923 F. Supp. at 38 (denying a request for an evidentiary hearing or discovery since there was "no objective showing that the prosecution would not have been brought even in the absence of vindictiveness"). Therefore, McCarthy's comments cannot support McMahon's motion for discovery and an evidentiary hearing.

2.    Reference to McMahon in Appellate Brief Does Not Prove Animus

In a further attempt to connect the dots between his own prosecution and the Bergrin prosecution, McMahon points out that the Bergrin prosecutors tried to undercut McMahon's credibility by pointing out in a brief submitted in opposition to Bergrin's motion for a new trial in that case that "McMahon has his own credibility problems" because he "has been charged with Federal felonies." (McMahon Br., Dkt. 146-1, at 24 (citing Br. for Appellee at 38, *USA v. Bergrin*,

14

No. 20-2828, 2021 WL 2592644, at *31 (3d Cir. June 22, 2021)).)  Again in broad-brush fashion, McMahon argues that "the *Government* itself provides powerful evidence not only through its statements at the time of arrest"—referring to statements by Agent McCarthy—"but also in its briefing since then"—referring to the brief in the Bergrin case—"that prosecuting Mr. McMahon is at least in part an effort to continue the Bergrin prosecution." (*Id.* at 25 (emphasis added).)

McMahon's argument fails for numerous reasons.  First, McMahon once again throws around this label of "the Government," trying to aggregate the independent actions taken by Agent McCarthy, the Bergrin prosecutors, and the prosecutors in this case, in the hopes of meeting the standard for discovery or an evidentiary hearing.  But as explained earlier, to the extent that McMahon relies on animus of individuals who are not the prosecutors here, he must show a direct connection between those allegedly animus-harboring individuals and the decision to charge him. *See Hommosany*, 2000 WL 254050, at *2 (2d Cir. Mar. 3, 2000) ("It was not improper for the District Court to refuse to impute to the ultimate prosecutor the motives of agency investigators.").

Second, McMahon's contention that the decision to prosecute him in this case "is *at least in part* an effort to continue the Bergrin prosecution" (McMahon Br., Dkt. 146-1, at 24 (emphasis added)), applies the wrong standard.  Demonstrating that the prosecutor's actions were motivated "at least in part" is not enough; instead, McMahon must show that he "would not have been prosecuted except for the animus[,]" *i.e.*, but-for causation. *See Koh*, 199 F.3d at 640.

Third, even applying the correct standard, the Court finds that the Bergrin prosecutors' passing reference to McMahon's credibility in a brief submitted to a federal appellate court is woefully insufficient to order discovery or an evidentiary hearing.  McMahon has not identified any authority that would support the notion that a statement in a legal brief is the kind of evidence of animus that warrants discovery or an evidentiary hearing.  In fact, the case law shows that

statements by prosecutors' offices are insufficient evidence of vindictive motive unless those statements clearly "indicate that 'genuine animus' motivated the decision to prosecute." *See Sanders*, 211 F.3d at 718. For example, the Second Circuit in *United States v. Sanders* affirmed the district court's denial of a motion to dismiss the indictment based on the prosecutors' release of a statement to the press and submission of a sentencing letter, finding that these statements were no different from regular press releases and sentencing materials that include a "recitation of [] background information," and did not suggest any vindictive motive. *Id.* And in *United States v. Avenatti*, the district court found that "there [was] nothing unusual" about the United States Attorney's press release and comments he made at a press conference regarding the defendant's arrest because the challenged statements were not "extensive or belabored," they made clear that the charges in the complaint "were only allegations," and the challenged statements were "brief remarks" made during a 12-minute press conference. *See Avenatti*, 433 F. Supp. 3d at 568–69. Here, the Bergrin prosecutors were similarly discreet in referencing McMahon's indictment, discussing McMahon in only three sentences over the course of a 22-page brief. The Bergrin prosecutors also appropriately stated that McMahon had "been charged with Federal felonies," and refrained from overstating those facts or using any inflammatory language. (*See* Br. For Appellee at 38, *USA v. Bergrin*, No. 20-2828, 2021 WL 2592644, at *31 (3d Cir. June 22, 2021).)[6]

---

[6] It is emblematic of the challenges in McMahon's motion that the comments at issue in both *Sanders* and *Avenatti* were *about* those defendants' cases and were *made by* the prosecutors in those cases, while here, McMahon is arguing that a reference made in a case against a different individual (*i.e.*, Bergrin) by prosecutors not involved in this case (*i.e.*, Assistant United States Attorneys in the District of New Jersey) about McMahon's indictment is evidence of vindictive prosecution. Again, the Court has found no case law supporting the notion that comments made by one set of prosecutors can constitute evidence of vindictive prosecution by an entirely different set of prosecutors in a completely unrelated case.

At best, McMahon has suggested that his investigative work in support of Bergrin's appeal to the Third Circuit was "a thorn in the [Bergrin prosecutors'] side"; however, there is no evidence to support a finding that his efforts "drew blood," *i.e.*, that they were so effective that the Bergrin prosecutors would hold any animus against him. *See Sanders*, 211 F.3d at 718 ("Even assuming that the defendants were a thorn in the government's side, it does not follow that they were punished because they may have drawn blood."). In fact, despite McMahon's assistance to Bergrin, the trial court denied Bergrin's motion for a new trial, and the Third Circuit affirmed. *See United States v. Bergrin*, No. 20-2828, 2022 WL 1024624, at *1 (3rd Cir. Apr. 6, 2022). Although McMahon touts the "significan[ce]" of the interviews he conducted with "a number of witnesses who provided evidence that witnesses at Bergrin's second trial had testified falsely" (*see* McMahon Br., Dkt. 146-1, at 11), the Third Circuit did not find that Bergrin deserved a new trial. *See Bergrin*, 2022 WL 1024624, at *3–4 (affirming the district court's conclusion that the allegedly exculpatory evidence uncovered by McMahon were only "unsworn and unsigned statements [that] came from an informal jailhouse interview with Bergrin's private investigator, without the presence of counsel" and that the credibility of these accounts were "further undermined by contradictions and inconsistencies in their statements").[7] Because McMahon's investigative work ultimately failed to secure an evidentiary hearing—let alone a new trial for Bergrin—"it does not follow" that the Bergrin prosecutors had actual animus against McMahon. *See Sanders*, 211 F.3d at 718.

---

[7] Furthermore, there is no indication that the Third Circuit's decision was influenced in any way by McMahon's indictment in this case. That opinion does not cite or even allude to any issues with McMahon's credibility, and it does not mention McMahon's name or his indictment. *Bergrin*, 2022 WL 1024624, at *1.

Finally, as with Agent McCarthy, McMahon has made no showing that the Bergrin prosecutors "prevailed upon" the federal prosecutors in this District to bring the present case against McMahon or that the Bergrin prosecutors' alleged animus against McMahon was the but-for cause of this prosecution.  *See Koh*, 199 F. 3d at 640.  As discussed above, on that basis alone, McMahon's motion for discovery or an evidentiary hearing must be denied.  (*See supra*, at 13–14.)

### 3.   Individuals "Similarly Situated" to McMahon

The final piece of evidence McMahon points to in support of his motion for discovery and an evidentiary hearing is his identification of at least four other private investigators who were not indicted, despite being "similarly situated" to McMahon.  (*See* McMahon Suppl. Letter, Dkt. 147; McMahon Rep., Dkt. 152, at 11–13.)  Defendant contends that although he "contacted multiple law enforcement officials in the course of his investigation in connection with this matter" (*see* McMahon Br., Dkt. 146-1, at 25 n.11), unlike other private investigators, "he was never given the opportunity to" cooperate with the Government, which he submits is further evidence of a vindictive prosecutorial motive (*see* McMahon Rep., Dkt. 152, at 13).   In response, the Government points out that McMahon "fails to grapple with the reality that [he] *continued* to serve the harassment campaign directed against John Doe-1 and his family after these contacts [with law enforcement], and offered to assist the government only *after* he was arrested and charged, not before."  (Gov. Br., Dkt. 148., at 16 (emphasis in original).)

Before addressing McMahon's claim, the Court observes that he invokes the term "similarly situated" individuals, which appears in case law involving selective prosecution claims, but he does not appear to be making a separate selective prosecution claim.  Nowhere in his papers does McMahon claim that his prosecution was the result of some discrimination based on a constitutionally-recognized protected class of which he is a member.  *See Alameh*, 341 F.3d at 173

("A defendant seeking to show [selective prosecution] must show that the decisionmaker selected or reaffirmed a particular course of action at least in part because of . . . its adverse effects upon an identifiable group.") (quotation marks and citations omitted); *see also Whaley v. Lopez*, No. 12-CV-2889 (SJF) (ARL), 2012 WL 3137900, at *10 (E.D.N.Y. July 30, 2012) (rejecting selective prosecution claim because "the only 'identifiable group' to which [the movants] allegedly belong" is individuals who were convicted felons, but "an individual's criminal history is not an impermissible consideration for purposes of the Equal Protection Clause"). The Court therefore construes McMahon's reference to these unindicted private investigators as an attempt to provide evidence of purported vindictive prosecution against him.

Putting aside McMahon's conflation of the standards for vindictive and selective prosecution, the Court finds, based on the record before it, that McMahon is not "similarly situated" to the private investigators to whom he compares himself. Although McMahon states on multiple occasions that he "contacted" law enforcement officials, he notably does not provide key details of his contacts with law enforcement, such as what level of detail he included in his conversations with these law enforcement officials; whether his "contact" was a formal report about potential illicit activity or was in the form of casual and fleeting comments; whether he spoke with them at the outset of the alleged conspiracy or after the operative events had already occurred; and how he came to contact these particular law enforcement officials.[8] (*See, e.g.*, McMahon Br.,

_____

[8] Defendant argues that "the Government unfairly excoriates [him] for continuing his routine investigative activities after he had contacted law enforcement" even though "none of the authorities that Mr. McMahon contacted . . . were in a position to or did provide him with the opportunity to cooperate in this investigation." (McMahon Rep., Dkt. 152, at 13, n.10.) This is why the Court questions the nature of his "contact" with law enforcement authorities, whom he identifies as "local law enforcement, DEA Agent Greg Finning and FBI Agent Brian O'Rourke." (McMahon Br., Dkt. 146-1, at 25.) As an experienced law enforcement official, had McMahon wanted to alert authorities, he surely would have been able to contact the authorities who could have "provide[d] him with the opportunity to cooperate."

Dkt. 146-1, at 25 n.11 & 29 n.13; McMahon Rep., Dkt. 152, at 13 n.10.) Such details are what distinguish McMahon's case from the Government's allegations against the California PI hired to surveil the victim, Jane Doe-2. According to the Government, the California PI "was a confidential human source for the FBI" when he or she was meeting with one of the defendants charged in the Complaint in this case, and the California PI only undertook "purported" *i.e.*, sham, efforts to locate Jane Doe-2. (Compl., Dkt. 1, ¶ 81, n.6; Gov. Br., Dkt. 148, at 15.) By contrast, McMahon is alleged to have actually surveilled another victim, John Doe-1, and his family, and he claims no history of being an FBI source. Similarly, McMahon's attempt to compare himself to the private investigator mentioned in *United States v. Lin*, No. 22-MJ-251, is unconvincing. (*See* McMahon Br., Dkt. 146-1, at 16–17; McMahon Rep., Dkt. 152, at 12.) As the Government notes, the private investigator in that case had "reported to the FBI that he had been recently contacted by" the defendants in that case. (*See* Gov. Br., Dkt. 148, at 15.) By contrast, McMahon does not seem to have reported the conduct of his co-defendants to the FBI.[9] Therefore, the Court finds that McMahon is not similarly situated to either of these other two private investigators.

Yet, the Court need not distinguish each of the remaining private investigators mentioned by McMahon.[10] Although courts must "consider what evidence a defendant can obtain with due

_____

[9] As indicated above, its is unclear whether McMahon's alleged contact with FBI Agent O'Rourke was an attempt to "report" his co-conspirators activities to the law enforcement. The Court also notes that McMahon repeatedly states that he was never offered the chance to cooperate, and seems to blame the law enforcement officials he allegedly contacted for not "advis[ing] him that what he was doing was wrong." (McMahon Rep., Dkt. 152, at 13 n.10.) Again, this sympathetic self-portrayal as someone who acted in reliance on law enforcement officials not advising him that his activities violated the law is at odds with his self-described background as "a celebrated former police officer." (*Id.* at 19.)

[10] In fact, the Court cannot fully evaluate or compare the severity of the Government's allegations against Defendant in this case to the allegations made against the other private investigators. For the other cases, the Court can only access the publicly filed indictments and criminal complaints, which are typically not "detailed presentation[s] of the entirety of the evidence" the Government has. *United States v. Sampson*, 898 F.3d 270, 282 (2d Cir. 2018).

diligence in the absence of discovery," they need not credit statistical evidence provided by the defendant if that evidence "suffers from serious methodological difficulties." *Alameh*, 341 F.3d at 174. That is the case with the evidence McMahon submits regarding the unindicted private investigators. For example, there is no explanation of how the defense went about identifying these other private investigators, nor any sense of how exhaustive the search was (either geographically or temporally), which leaves this Court unable to weigh the probative value of these handful of purported comparators. *See id.* at 172 n.2 (discrediting statistical evidence "because the defense provide[d] no basis for reviewing the methodology by which it reached any of its conclusions—offering only raw information obtained from [the search engine] CourtLink and [the defense's] conclusions . . . "); *cf. Berrios*, 501 F.2d at 1212 n.4 (finding affidavits from defendant and attorney that they "believe[d]" "hundreds" of similarly situated individuals went unprosecuted to be unconvincing evidence of selective prosecution). In fact, McMahon never indicates whether he identified any investigators he considers to be "similarly situated" to him that were prosecuted under 18 U.S.C. § 951(a)(2).[11] Accordingly, the Court finds that McMahon's evidence of

---

Moreover, the Court has no insight into whether federal prosecutors continue to investigate the other private investigators or others in those schemes or whether the prosecutors might file superseding indictments in these cases. This lack of transparency and informational asymmetry is why "the decision to prosecute is particularly ill-suited to judicial review." *See Wayte*¸ 470 U.S. at 607.

[11] McMahon identifies one private investigator prosecuted in the Southern District of New York, but he claims that individual is not "similarly situated" to him. The Court is not convinced by McMahon's attempt to distinguish this indicted private investigator in *United States v. Liu*, No. 22-CR-311 (LDH) (VMS). McMahon argues that because the private investigator in that case was charged with obstruction of justice for destroying evidence when approached by FBI agents, rather than as acting as an illegal agent of a foreign government, this investigator is not "similarly situated." (McMahon Br., Dkt. 146-1, at 29 n.13.) At the same time, however, McMahon relies on *United States v. Farahani* as a case that supports his motion. *Farahani* involves not only a different United States Attorney's Office, but, importantly, none of the defendants in that case were charged with acting as an illegal agent of a foreign government in violation of 18 U.S.C. § 951(a)(2) or engaging in a conspiracy to do so. (*See* Superseding Indictment, *Farahani*, No. 21-CR-430 (RA), Dkt. 14, ¶¶ 15–37 (S.D.N.Y. July 13, 2021). Yet, McMahon touts *Farahani* as

"similarly situated" private investigators who were not prosecuted is insufficient evidence of vindictive prosecution.

* * *

In sum, the Court finds that none of the evidence proffered by McMahon—either evaluated on their own or considered together—reach the threshold of "some evidence" of the "essential elements" for a vindictive prosecution claim, so as to warrant discovery or an evidentiary hearing.

### C.    None of the Cases Defendant Cites Are Availing

Finally, the remaining cases McMahon cites as examples of courts granting discovery or an evidentiary hearing on vindictive prosecution claims are plainly distinguishable from this case. (*See* McMahon Rep., Dkt. 152, at 14–17.)  Defendant is incorrect in claiming that the Second Circuit's decision in *Berrios* "squarely supports [his] request for discovery and an evidentiary hearing." (*See id.* at 14.)  First, it is clear from reading *Berrios* that the Second Circuit disagreed with the district court's decision to order discovery into the defendant's allegations of vindictive prosecution, but ultimately upheld part of the lower court's decision on an abuse of discretion standard.  *See Berrios*, 501 F.2d at 1212 ("Notwithstanding the apparent weakness of Berrios' claim, we recognize that the decision to permit a hearing and, . . . to authorize a subpoena of evidence in the government's possession, lies largely in the trial judge's discretion.").[12]

---

another instance of federal prosecutors not charging private investigators who allegedly supported efforts to repatriate or harass U.S. residents.  The inconsistency in McMahon's argument about certain cases being relevant (*i.e.*, *Farahani*) while others are not (*i.e.*, *Liu*) suggests cherry-picking and strongly undercuts the credibility of his evidence of "similarly situated" private investigators.

[12] Defendant also overlooks the fact that, in *Berrios*, the Circuit only found that the lower court did not abuse its discretion in "ordering the government to turn over to [the judge] for 'study' its memorandum recommending prosecution," but went on to explain that the court "went too far" in directing the government to surrender the memorandum to the defendant before the court's consideration of the prosecution memorandum's relevance to the vindictive prosecution claim. *Berrios*, 501 F.2d at 1212.  Here, Defendant's requested relief is not for the Court to conduct an *in-camera* review of a specific document, but for open-ended discovery and an evidentiary hearing.

Importantly, in *United States v. Al Jibori*, the Second Circuit noted that the abuse of discretion standard applied in *Berrios* was "seriously undermine[d]" by the Supreme Court's decision in *Armstrong*, which "clarified the threshold at which a defendant is entitled to discovery to help prove [a vindictive prosecution] claim." *Al Jibori*, 90 F.3d 22, 25 (2d Cir. 1996) (citing *Armstrong*, 517 U.S. at 470). Therefore, to the extent that McMahon relies on *Berrios* to indicate that he has met the same threshold that was sufficient for the trial court in that case to order discovery, that threshold is now higher.

Even setting aside how the standard for a district court to order discovery has changed since *Berrios*, McMahon offers far less evidence in this case than what was found sufficient by the trial court in *Berrios*. While McMahon argues that he has "established a link between those actually investigating [him] in this matter . . . and those involved with the Paul Bergrin case" (*see* McMahon Rep., Dkt. 152, at 15), the Court clearly disagrees. In *Berrios*, the fact that the animus was alleged to have been held by acquaintances or relatives of President Nixon made it plausible that their animus was the "but-for cause" of the federal prosecution. *See Berrios*, 501 F.2d at 1209–10. Here, even if the Court accepts the implausible proposition that Agent McCarthy had animus toward a private investigator who was not involved in any of his cases—but rather his former officemate's case—there is no explanation for how Agent McCarthy could have "prevailed upon" federal prosecutors in this District to investigate and prosecute McMahon. Furthermore, in *Berrios* there were at least newspaper reports that suggested objective third parties also believed there was a possible vindictive motive behind the prosecution in the case; by contrast, the only individuals in this case who seem to suspect a vindictive motive are McMahon, his family members, and his

---

In any event, the Court would not even order a more limited request for *in camera* review of government documents in this case.

attorney, who, notably, represented Bergrin.  *Id.* at 1209–10.  The evidence presented in *Berrios* was unquestionably stronger, and as the Court noted above, even that amount of evidence no longer defines the quantum of evidence needed to justify an evidentiary hearing or discovery.[13]

McMahon is also incorrect in arguing that he "has here shown much more" than the evidence put forth in *United States v. Williams*, No. 20-CR-55 (LMA) in support of the defendants' motion for an evidentiary hearing on a claim of vindictive prosecution.  (*See* McMahon Rep., Dkt. 152, at 15–16.)  In *Williams*, defendants Jason Williams and Nicole Burdett secured an evidentiary hearing based on (1) allegations that (a) federal agents had visited the homes of Burdett's brother, sister, and daughter, just a few hours before oral argument on a motion to dismiss the indictment, (b) a couple days after the oral argument, prosecutors sought to serve a grand jury subpoena on Burdett's mother, who was in poor health, and (c) prosecutors produced in discovery pictures of Burdett's family members, who had no apparent relevance to the defendants' tax evasion charge; (2) the indictment being returned three weeks before the filing deadline for candidates running to become the New Orleans District Attorney, when defendant Williams had announced months earlier that he intended to run for that office and the federal investigation had been going on for years; and (3) the government's own concession that federal law enforcement started investigating

---

[13] McMahon cites *United States v. Amberslie* as another example of a court granting discovery or an evidentiary hearing "on far less than the showing made" by McMahon.  (McMahon Rep., Dkt. 152, at 16–17.)  In *Amberslie*, after the jury hung on the "single narrow, and low-level narcotics charge" following the court ruling inadmissible defendant's four "similar acts" of narcotic transactions, the government brought a superseding indictment "with a conspiracy count embracing all four of the previously excluded acts."  *See* 312 F. Supp. 2d 570, 571 (S.D.N.Y. 2004).  The trial judge ordered an evidentiary hearing into alleged vindictive prosecution in light of the prosecutors lodging "vigorous objections" to the exclusion of prior acts in the first trial and the "greatly increased [] possible punishment" if defendant were convicted on the superseding charge.  *Id.* at 572.  Even on these facts, the trial court found that the "full set of circumstances" presented in that case was "barely" sufficient to raise a presumption of vindictiveness.  *Id.* at 571. In light of the above analysis of the evidence proffered by McMahon, the Court finds that the facts presented in *Amberslie* present a stronger case for an evidentiary hearing.

Williams because he was a public official and because he "failed to meet" with the government for a voluntary interview in connection with an investigation into Williams's accountant. *See Williams*, 2020 WL 5960689, at \*14–16 (E.D. La. Oct. 8, 2020). None of these circumstances—*i.e.*, harassment of family members, government concessions as to investigators' motives, and suspicious timing of the indictment—exist in McMahon's case. Perhaps recognizing that the evidence of vindictiveness in *Williams* was stronger, McMahon argues implausibly that an evidentiary hearing to "fully develop his claims" is "even more necessary" because of "the absence of the kinds of statements that were provided in *Williams*." (McMahon Rep., Dkt. 152, at 16.) Yet, McMahon flips the standard on its head: he must first proffer sufficient evidence of vindictiveness to show that an evidentiary hearing is warranted before being granted one; he cannot use the *absence* of such evidence to obtain a hearing. *See Aviv*, 923 F. Supp. at 37 (whether a defendant seeks discovery or an evidentiary hearing, "both standards require some evidence").

None of the other cases McMahon cites from outside this Circuit are helpful.[14] In fact, one of those cases—*United States v. Young*, 231 F. Supp. 3d 33 (M.D. La. 2017)—directly undermines McMahon's motion. McMahon cites *Young* as an instance of a district court ordering two evidentiary hearings before ultimately denying a motion to dismiss the indictment for selective and vindictive prosecution, perhaps to suggest that even if the Court suspects there is not enough

---

[14] These out-of-circuit cases are of course not binding on this Court. Moreover, those cases entail far more *prima facie* evidence of vindictive animus than McMahon has produced in this case. *See United States v. Adams*, 870 F.2d 1140, 1144 (6th Cir. 1989) (granting discovery where there was an affidavit by the former director of the regional EEOC office about the reputation of the head attorney of that office "for being unfair and vindictive toward people who 'cross' him, such as [defendant] Adams" and the existence of confidential memoranda from the head attorney and others about the government's investigation into Adams); *United States v. Lanoue*, 137 F.3d 656, 664 (1st Cir. 1998) (finding defendant did not show prosecutorial vindictiveness even where the same prosecutor brought charges against the defendant three times in his capacity as an Assistant United States Attorney, and possibly one other time as a state prosecutor).

evidence for vindictive prosecution against McMahon, it should take the initial steps of holding an evidentiary hearing and allowing limited discovery.  (McMahon Rep., Dkt. 152, at 16–17.)  But *Young* directly contradicts McMahon's motion—and provides further support for this Court's ruling—because there the court rejected comments that an FBI agent allegedly made as evidence of vindictiveness, finding that "as a general rule, the conduct of investigators is not imputed on prosecutors."  *Young*, 231 F. Supp. 3d at 120 (citing cases, including *Koh*).[15]

Therefore, McMahon's motion for discovery and an evidentiary hearing must fail.

### D.    Defendant's Allegation of "No Evidence" of Knowledge

Finally, the Court addresses briefly a recurring, largely irrelevant theme in McMahon's motion and supporting papers that there is "absolutely no evidence of [his] knowledge that he was acting on behalf of another country[.]"  (*See* McMahon Br., Dkt. 146-1, at 25.)[16]  As in his prior

---

[15] McMahon attempts to distinguish *Koh* by arguing that the "timing of the investigation [into Koh] dispell[ed] any question that the reason for the prosecution was solely vindictive in nature." (*See* McMahon Rep., Dkt. 152, at 19.)  This argument is also misplaced.  In *Koh*, the timing of the investigation was only important because there was evidence that the person who allegedly had the animus toward Koh—a former Southern District of New York prosecutor—had alerted federal prosecutors in that district to Koh's potential criminal activity and therefore had "been responsible for bringing [the] assertedly fraudulent activities to the attention of the U.S. Attorney's Office."  *Koh*, 199 F.3d at 640.  Notwithstanding these circumstances, the Second Circuit found no evidence of vindictive prosecution because the investigation into Koh had been launched months before the former prosecutor had alerted prosecutors to the criminal activity.  *Id.* at 641.  By contrast, here, McMahon has not alleged or produced any evidence that either Agent McCarthy or the Bergrin prosecutors proactively "approached the U.S. Attorney's Office" in this District to advocate for the investigation or prosecution of McMahon.  Therefore, the timing of the investigation does not factor into the Court's assessment of whether McMahon has met his burden.

[16] *See, e.g.*, Dkt. 146-1, at 1 ("there is literally no evidence that he was aware, at any time, that he was . . . working on behalf of the Chinese government"); *id.* ("the prosecution has never revealed a single statement, taped or otherwise, showing that Mr. McMahon understood or was told that he was working for any foreign power"); *id.* at 25 (claiming that the discovery provided to McMahon "includes absolutely no evidence of Mr. McMahon's knowledge that he was acting on behalf of another country"); McMahon Rep., Dkt. 152, at 1 ("[T]he Government[] [has failed over] these many months to produce any evidence that he was ever told that . . . his real client was a foreign nation[.]"); *id.* at 5 (evidence "that Mr. McMahon was aware that he was working for those [foreign] authorities . . . [has] still never [been] provided by the Government"); *id.* at 5 n.6

motion to dismiss, Defendant again raises "a question of sufficiency [of the evidence] that is inappropriate at this stage" of the case. *See Ji*, 2022 WL 595259, at *3 (citing *United States v. Wedd*, 933 F.3d 104, 121 (2d Cir. 2021)). Because McMahon has failed to offer "some evidence" needed for an evidentiary hearing or discovery regarding allegedly vindictive prosecution, there is no need for the Court to deviate from the general rule that a district court "lacks the authority to *require* the government, before trial, to make [] a presentation" of all of its evidence. *Wedd*, 933 F.3d at 121 (citation and quotation marks omitted). To the extent that McMahon believes the Government's evidence is insufficient to prosecute him, he will have a full opportunity to make that argument in front of a jury at trial.

## CONCLUSION

For the reasons stated herein, Defendant McMahon's motion for discovery or an evidentiary hearing is denied.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 21, 2023
        Brooklyn, New York

---

("There is no evidence that [Defendant] knew about" Operation Foxhunt or Skynet); *id.* at 6 (decrying "the absence of evidence that has never been disclosed and apparently does not exist that Mr. McMahon was ever told by anyone at any time that he was in fact being employed by the Chinese government"); *id.* at 19 ("[A]s discussed at length here, the evidence against him is extremely weak.").